UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

         Plaintiff,                    CRIMINAL NO. 14-20153

v.                               HON. ARTHUR J. TARNOW

MICHAEL GODLEWSKI,

         Defendant.

---

**United States' Response to Defendant's Motion for Compassionate Release**

---

After spending nearly a decade amassing a collection of child pornography, Michael Godlewski started looking online for a child to sexually abuse. After posting an advertisement on Craigslist, on December 21, 2013, Godlewski showed up to an apartment complex in the Eastern District of Michigan to have sex with a 13 year-old girl. With him, Godlweski brought marijuana to drug the child, diapers for the child to put on him, and condoms. Fortunately, law enforcement was waiting for him and Godlewski was not able to victimize another child. Godlewski pleaded guilty to online enticement of a minor and receipt of child pornography. This Court sentenced Godlewski to 121 months' imprisonment.

Godlewski has more than two years left on the mandatory minimum sentence for his crimes. Despite his representations to this Court that he has been rehabilitated, Godlewski has declined to participate in the BOP's sex offender treatment. He now moves for compassionate release—without meeting the exhaustion requirement—under 18 U.S.C. § 3582(c)(1)(A) on the basis of a generalized fear of contracting Covid-19, and asymptomatic cysts on his testicles that are a side effect of a well-managed medical condition. His motion should be denied.

Godlewski does not qualify for compassionate release. For starters, because he has not satisfied the mandatory exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A), the Court is barred from addressing his argument on the merits. *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). Godlewski also does not satisfy the substantive requirements for compassionate release. "[T]he mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Even assuming a defendant facing a heightened risk from Covid-19 could satisfy the criteria in § 1B1.13(1)(A) & cmt. n.1, Godlewski does not have a condition that places him at higher risk from Covid-19. Godlewski's offense and refusal to participate in sex offender treatment also make him a danger to the community, which precludes release under USSG § 1B1.13(2), because he presents a danger to children, both in person and online. And the § 3553(a) factors—

which the Court must also consider under § 3582(c)(1)(A)—likewise do not support release.

The Bureau of Prisons has also taken significant steps to protect all inmates, including Godlewski, from Covid-19. Since January 2020, the Bureau of Prisons has implemented "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread in its facilities. *Wilson v. Williams*, 961 F.3d 829, 834 (6th Cir. June 9, 2020). And the Bureau of Prisons has assessed its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can safely be granted home confinement. As of July 20, 2020 this process has already resulted in at least 6,997 inmates being placed on home confinement. *See* [BOP Covid-19 Website](). Over 100 of those inmates are from the Eastern District of Michigan. Especially given the Bureau of Prisons' efforts—and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson,* 961 F.3d at 845—the Court should deny Godlewski's motion for compassionate release.

## Background Information

In 2014, Godlewski pleaded guilty to online coercion and enticement of a minor and receiving child pornography. The United States filed a sentencing memorandum in this case. It is attached as Exhibit A, and incorporated by reference, here. (R. 25.)  Godlewski is serving a 121- month sentenced imposed by this Court.

(R. 27.)   Godlewski's criminal conduct, which spanned more than a decade, victimized innocent children, enabled and encouraged the sexual desires of countless others, and culminated when he moved from behind his computer screen and attempted to meet and sexually abuse a 13 year-old girl in real life.

Godlewski is currently incarcerated at FCI Petersburg Low in Virginia. He is 35 years old, and his earliest release date is July 26, 2022. When Godlewski transferred into FCI Petersburg in 2018, BOP staff screened his possessions and found 53 photographs that staff deemed to be "risk relevant." (Exhibit B: Bureau of Prisons Records, filed under seal, page 194). Those photographs depicted underage girls in diapers, underage girls in sexual positions, and underage girls who appear to be pregnant. *Id.* In the instant motion, Godlewski points to a urinary stricture condition—which makes it difficult to fully void his bladder—as a medical condition that puts him at greater risk for developing Covid-19 complications. But medical professionals have deemed this condition to be non-threating, and Godlewski is managing it with self-dilation. It is not a risk factor recognized by the CDC. In addition, FCI Petersburg has no cases of Covid-19 infection among its inmates. One staff member tested positive and has recovered. *See* BOP Covid-19 Website  Nevertheless, Godlewski has moved for compassionate release, citing this medical condition and the Covid-19 pandemic. But he has failed to administratively

exhaust his request with the BOP, as is required by the Sixth Circuit. *United States v. Alam*, 960 F.3d at 833. His motion should be denied.

**Argument**

I.    **The Bureau of Prisons has responded to Covid-19 by protecting inmates and increasing home confinement.**

    A.    **The Bureau of Prisons' precautions have mitigated the risk from Covid-19 within its facilities.**

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, 961 F.3d 829, 834 (6th Cir. June 9, 2020). For over almost a decade, the Bureau of Prisons has maintained a detailed protocol for responding to a pandemic. Consistent with that protocol, the Bureau of Prisons began planning for Covid-19 in January 2020.

On March 13, 2020, the Bureau of Prisons began modifying its operations to implement its Covid-19 Action Plan and minimize the risk of Covid-19 transmission into and inside its facilities. *See* BOP Covid-19 Modified Operations Website. Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. To stop the spread of the disease, the Bureau of Prisons has restricted inmate movement within and between facilities. *See id.* When new inmates arrive, asymptomatic inmates are placed in quarantine for a minimum of 14 days. *Id*. Symptomatic inmates are provided with medical evaluation and treatment and are

isolated from other inmates until testing negative for Covid-19 or being cleared by medical staff under the CDC's criteria. *Id.*

Within its facilities, the Bureau of Prisons has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.* Staff and inmates are issued face masks to wear in public areas. *See* BOP FAQs: Correcting Myths and Misinformation. Staff and contractors are screened for symptoms, and contractors are only permitted to access a facility at all if performing essential service. *Wilson*, 961 F.3d at 834. Social and legal visits have been suspended to limit the number of people entering the facility and interacting with inmates. *Id.* But to ensure that relationships and communication are maintained throughout this disruption, the Bureau of Prisons has increased inmates' telephone allowance to 500 minutes per month. Legal visits are permitted on a case-by-case basis after the attorney has been screened for infection.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. But the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care during these difficult times.

**B.      The Bureau of Prisons is increasing the number of inmates who are granted home confinement.**

The Bureau of Prisons has also responded to Covid-19 by increasing the placement of federal prisoners in home confinement. New legislation now temporarily permits the Bureau of Prisons to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement" during the Covid-19 pandemic. Coronavirus Aid, Relief, and Economic Security Act (CARES Act) § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020). The Attorney General has also issued two directives, ordering the Bureau of Prisons to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing Covid-19 pandemic." (03-26-2020 Directive to BOP, at 1; *accord* 04-03-2020 Directive to BOP, at 1). The directives require the Bureau of Prisons to identify the inmates most at risk from Covid-19 and "to consider the totality of circumstances for each individual inmate" in deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1).

The Bureau of Prisons' efforts on this point are not hypothetical. Over 6,997 federal inmates have been granted home confinement since the Covid-19 pandemic began, and that number continues to grow. BOP Coronavirus FAQs. As the Attorney General's directives have explained, these home-confinement decisions have required evaluating several criteria:

1.) Each inmate's age and vulnerability to Covid-19;

2.) Whether home confinement would increase or decrease the inmate's risk of contracting Covid-19; and

3.) Whether the inmate's release into home confinement would risk public safety.

(03-26-2020 Directive to BOP; 04-03-2020 Directive to BOP).

These criteria not only make sense, but also fit the realities of the Covid-19 pandemic far better than any other solution does. The Bureau of Prisons cannot open its facilities' gates indiscriminately and unleash tens of thousands of convicted criminals, en masse. It must focus on the inmates who have the highest risk factors for Covid-19 and are least likely to engage in new criminal activity. This is true not just to protect the public generally, but to avoid the risk that a released defendant will bring Covid-19 back into the jail or prison system if he violates his terms of release or is caught committing a new crime. *See* 18 U.S.C. § 3624(g)(5); 34 U.S.C. § 60541(g)(2). The Bureau of Prisons' home-confinement initiative thus appropriately focuses on the inmates who will most benefit from release and whose release is least risky.

The Bureau of Prisons must also balance another important consideration: how likely is an inmate to abide by the CDC's social-distancing protocols or other Covid-19-based restrictions on release? If a prisoner would be unlikely to take release conditions or Covid-19 precautions seriously, he would also be far more likely than the general public to contract and spread Covid-19 if released.

Finally, the Bureau of Prisons' home-confinement initiative allows it to marshal and prioritize its limited resources for the inmates and circumstances that are most urgent. For any inmate who is a candidate for home confinement, the Bureau of Prisons must first ensure that his proposed home-confinement location is suitable for release, does not place him at an even greater risk of contracting Covid-19, and does not place members of the public at risk from him. It must assess components of the release plan, including whether the inmate will have access to health care and other resources. It must consider myriad other factors, including the limited availability of transportation right now and the probation department's reduced ability to supervise inmates who have been released. All of those decisions require channeling resources to the inmates who are the best candidates for release.

Those types of system-wide resource-allocation decisions are difficult even in normal circumstances. That is why Congress tasked the Bureau of Prisons to make them and has not subjected the decisions to judicial review. 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."); *United States v. Patino*, No. 18- 20451, 2020 WL 1676766, at *6 (E.D. Mich. Apr. 6, 2020) ("[A]s a general rule, the Court lacks authority to direct the operations of the Bureau of Prisons."). It is especially true now, given the Bureau of Prisons' substantial and ongoing efforts to address the Covid-19 pandemic.

## II.     The Court should deny Godlewski's motion for compassionate release.

Godlewski's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Quite the contrary: a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020); *United States v. Raia*, 954 F.3d 594, 595–96 (3d Cir. 2020). Because this requirement is a statutory one and not judicially crafted, it is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016); *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 751 (6th Cir. 2019).

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for compassionate release, and release must be "consistent with" the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). As with the identical language in § 3582(c)(2), compliance with the policy statements incorporated by § 3582(c)(1)(A) is mandatory. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014). To qualify, a defendant must have a medical condition, age-related issue, family circumstance, or other reason that satisfies the criteria in USSG § 1B1.13(1)(A) & cmt. n.1, and he must "not [be] a danger to the safety of any other person or to the community," USSG § 1B1.13(2).

*Third*, even if a defendant is eligible for compassionate release, the district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

## A.    The Court is barred from granting release because Godlewski has not exhausted his administrative remedies.

The Court must dismiss Godlewski's motion, because he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Until recently, only the Bureau of Prisons could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to move for it, too. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).

But the provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id.* A district court may not grant a defendant's motion for compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam,* 960 F.3d at 832  (6th Cir. 2020); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020).

As the Sixth Circuit recently explained, because the exhaustion requirement in § 3582(c)(1)(A) is a statutory one and not judicially crafted, it is mandatory. *Alam*, 960 F.3d 831, 834; *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016). Unlike judicially crafted requirements, statutory requirements may not be excused, even to account for "special circumstances." *Ross*, 136 S. Ct. at 1856–57.

In *Alam*, the Sixth Circuit held that the Covid-19 pandemic does not permit inmates or district judges to bypass § 3582(c)(1)(A)'s exhaustion requirement. 960 F.3d 831, 836. Rather, "[t]he seriousness of COVID-19 and its spread in many

prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause." *Id.*; *see also Raia*, 954 F.3d at 597 ("Given BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance.").

Godlewski did not exhaust his administrative remedies. In his motion requesting compassionate release, Godlweski does not claim to have filed a request with the BOP. And the BOP does not have any records to suggest that Godlewski ever filed such a request. Godlewski has therefore not satisfied § 3582(c)(1)(A)'s mandatory exhaustion requirement, and his motion should be dismissed without prejudice.

## B.     There are no extraordinary and compelling reasons to grant Godlewski's compassionate release.

Even if Godlewski had exhausted his administrative remedies (he has not), compassionate release would be improper, and his motion should be denied with prejudice. Compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under

§ 3582(c)(1)(A), as well developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t).

Because the Sentencing Commission has fulfilled Congress's directive in USSG § 1B1.13, that policy statement is mandatory. Section 3582(c)(1)(A)'s reliance on the Sentencing Commission's policy statements mirrors the language governing sentence reductions under 18 U.S.C. § 3582(c)(2) for retroactive guideline amendments. *Compare* § 3582(c)(1)(A) *with* § 3582(c)(2). When Congress uses the same language in the same statute, it must be interpreted in the same way. *Marshall*, 954 F.3d at 830. In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014); *accord Dillon v. United States*, 560 U.S. 817, 830 (2010).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend the substantive requirements for release. *United States v. Saldana*, 807 F. App'x 816, 818–20 (10th Cir. 2020); *United States v. Mollica*, No. 2:14-CR-329, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020). Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical

condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in Program Statement 5050.50. USSG § 1B1.13 cmt. n.1. As the Tenth Circuit recently explained, a district court "lack[s] jurisdiction" to grant compassionate release when a defendant's circumstances do not fall within those categories. *Saldana*, 807 F. App'x at 820.

The Covid-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release. The Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from Covid-19 to Godlewski and other inmates. Thus, as the Third Circuit has explained, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

Godlewski's age and medical condition likewise do not satisfy the requirements for release in USSG § 1B1.13 cmt. n.1, even when considered in combination with the Covid-19 pandemic. The only purported medical condition Godlewski alleges is a urinary condition he has been managing for the last two decades, at least. His current medical records indicate that his condition is stable and is managed by weekly self-dilation. (Exhibit B, page 21).

So whether considered alone or in combination with the Covid-19 pandemic, Godlewski's age and medical condition do not satisfy the initial eligibility criteria for release under USSG § 1B1.13 cmt. n.1. *See United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at \*5–\*6 (E.D. Mich. May 15, 2020).

Finally, even if the combination of Godlewski's medical conditions and the Covid-19 pandemic satisfied the initial criteria for eligibility in USSG § 1B1.13 cmt. n.1, Godlewski would remain ineligible for compassionate release because he is a danger to the community. Section 1B1.13(2) only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As relevant here, "federal courts have been disinclined to grant compassionate release to petitioners convicted of crimes involving child pornography, even for vulnerable petitioners during the COVID-19 pandemic, citing potential dangerousness." *Coleman v. United States*, No. 4:17-CR-69, 2020 WL 3039123, at \*4 (E.D. Va. June 4, 2020); *see also States v. Ciccone*, 2020 WL 1861653, at \*3 (N.D. Ohio Apr. 14, 2020). Courts are particularly disinclined to release inmates to the place where they committed the offense or without a detailed plan to prevent reoffending. *See, e.g.*, *United States v. Mitchell*, 2020 WL 2770070, at \*4 (E.D. Cal. May 28, 2020) (denying compassionate release where the inmate proposed returning to the same home where he committed the crime without a plan to prevent reoffending); *United States v. Feiling*, 2020 WL 1821457, at \*8 (E.D. Va.

Apr. 10, 2020) (denying compassionate release in part because the inmate wanted to return to the home where he committed his offense); *United States v. Hylander*, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (denying a motion for compassionate release because the inmate proposed returning to the location of his offense). And "given the ease with which child pornography is accessible in the modern world," releasing such offenders "is likely to require stringent and frequent monitoring," which creates a safety risk for the officers tasked with that responsibility during a health pandemic. *United States v. Sears*, 2020 WL 3250717, at *3 (D.D.C. June 16, 2020); *see also United States v. Meizin*, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying compassionate release because of the easy access to electronic devices).

Adhering to § 1B1.13(2) is especially important given the current strain on society's first responders and the rise in certain types of crime during the Covid-19 pandemic. Police departments in many cities have been stretched to their limits as officers have either contracted Covid-19 or been placed in quarantine. Some cities, including Detroit, have seen spikes in shootings and murders. Child sex predators have taken advantage of bored school-aged kids spending more time online. Covid-19-based fraud schemes have proliferated. There are real risks to public safety right now, and those risks will only increase if our community is faced with a sudden influx of convicted defendants.

Godlewski has not participated in any sex offender treatment during his time with the BOP. This failure makes him dangerous. Before his 2014 sentencing, Godlewski wrote the Court a letter expressing his desire to complete treatment and counseling. (R. 26-6). Godlewski promised this Court: "I am willing to do whatever it takes to get my mind fixed..." (*Id.*, PgID 163). But that, it turns out, was an empty promise. Because even though this Court recommended BOP's Sex Offender Treatment Program (SOTP) in its judgment (R. 27, Judgment, PgID 165), and even though Godlewski promised this Court that he would engage in therapy, he has not. Instead, he has taken Beginner's Ceramics and Sudoku Skills classes. (Exhibit B, page 188). Godlewski has done nothing to address his sexual attraction to children, even though the opportunity has been there for him for the last six years. And Godlewski's actions while incarcerated—possessing inappropriate and sexual photographs of children—demonstrate that he continues to pose a danger to children. (Exhibit B, page 194.)

The BOP offers two levels of sex offender treatment: residential and non-residential. The residential program, or Residential Sex Offender Treatment Program (SOTP-R), is a "high intensity program designed for high-risk sexual offenders." BOP Program Statement, Number 5234.10, p. 14. Like the name suggests, in the residential program, the inmates "co-house" or live together. *Id.* This "permits the implementation of a modified therapeutic community," which has

"been proven effective in reducing inmate recidivism." *Id*. Therapeutic communities "in a prison setting stress[] pro-social values and behaviors that are needed in the outside community." *Id*. Residential sex offender treatment is similar to in-patient drug treatment; it is the most intensive and effective treatment for the most serious cases. BOP's residential sex offender treatment can take from 12 to 24 months to complete.

The BOP also offers non-residential sex offender treatment (SOTP-NR). The non-residential program is "a moderate intensity program designed for low- to moderate-risk sexual offenders." BOP Program Statement, Number 5234.10, p. 14. The non-residential program meets less frequently and for a shorter period of time than the residential program. *Id*. Non-residential sex offender treatment is similar to out-patient drug treatment; it is appropriate for low-risk sex offenders.

Both of BOP's sex offender treatment programs are voluntary. Although these programs are available to Godlewski, he has not participated in either one. Because Godlewski's release would endanger the community, § 1B1.13(2) prohibits reducing his sentence under § 3582(c)(1)(A). Godlewski is not eligible for compassionate release.

### C.   The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons" and demonstrated that he is not dangerous, he is still not entitled to compassionate

release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). So even if the Court were to find Godlewski eligible for compassionate release, the § 3553(a) factors should still disqualify him.

Godlewski's collection of child pornography included 4,387 images and 345 videos of graphic, disgusting, and horrific depictions of the sexual assault of children – including children under the age of two. Congress has deemed child pornography offenses heinous enough to attach mandatory minimum sentences, precisely because the nature and circumstances of the offense is egregious. But Godlweski did not stop at "just looking."  He sought out a sexual encounter with a child by posting an advertisement on Craiglslist. When he believed he found a woman willing to offer up her child for his sexual conquests, Godlewski told her he had been with a 15 year old before. Worse yet, Godlewski was willing to offer the child drugs to achieve his

sexual desires. And although Godlewski told the Court that he planned to participate in counseling and therapy while in custody, he has chosen not to participate in any sex offender treatment offered by the BOP.

Undoubtedly, this is a serious offense. Godlewski was convicted of violating 18 U.S.C. 2422(b) – Online Enticement, which is both a "crime of violence" as defined in the Bail Reform Act, 18 U.S.C. 3156(a)(4)(C), and a crime that involves a minor victim. He was also convicted of receipt of child pornography for his participation in the market that continues to exploit young children. Even after these convictions, Godlewski continued to acquire questionable photographs of young girls. Godlewski still needs deterrence. The public still needs to be protected from him.

**D.     Godlewski's victims oppose his release, and they have the right to be heard at the hearing.**

The Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, guarantees victims in criminal cases specific rights that are enforceable in federal court. Congress enacted the CVRA in order "to protect victims and guarantee them some involvement in the criminal justice process." *United States v. Moussaoui*, 483 F.3d 220, 234 (4th Cir. 2007). One of the rights enumerated in the CVRA is "the right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4).

MV-1 strongly opposes Godlewski's motion for compassionate release. MV-1, whose childhood sexual abuse was photographed and stored on Godlewski's devices, has prepared a powerful victim impact statement. In her letter, MV-1 points out the irony of Godlewski's request for compassionate release, when he showed no compassion to the victims depicted in the images he downloaded and shared. (Exhibit C: Victim Impact Letters, filed under seal.) MV-1's attorney also submitted a statement to the Court. MV-1 and her attorney request access to any hearing held on Godlewski's motion.

## III.   If the Court were to grant Godlewski's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Godlewski's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

## Conclusion

Godlewski's motion should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER,
United States Attorney

*s/Barbara K. Lanning*
BARBARA K. LANNING
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9103
Dated: July 21, 2020        E-Mail: barbara.lanning@usdoj.gov

## Certificate of Service

I hereby certify that on July 21, 2020, I electronically filed this response for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to the following via electronic mail to all counsel of record.

*s/Barbara K. Lanning*
BARBARA K. LANNING
Assistant United States Attorney
