UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,           Cr. No. 14-20153

        v.             District Judge Arthur J. Tarnow

MICHAEL RICHARD GODLEWSKI,

        Defendant.

_____/

**SUPPLEMENTAL BRIEF**
**IN SUPPORT OF PETITION FOR COMPASSIONATE RELEASE**

Michael Godlewski suffers a chronic medical condition, Balantis Xerotica Obliterans (BXO), for which he requires twice weekly trips to medical services to perform genital dilations on himself. The condition has caused him bloody urine, serious pain, and urinary tract infections. Because of the COVID-19 pandemic, he reports missed dilation treatments. He also has been in custody for more than six and a half years, over 76% of his imposed term of imprisonment. He has incurred zero disciplinary infractions, and he has completed 4,600 hours of educational programs. He has a plan for release to live in a home owned by his mother. Because of his serious health issues, and the lack of medical care during the pandemic, Godlewski asks this Court for immediate release under 18 U.S.C. § 3582(c)(1)(a).

1

## I.   **Procedural history**

This offense dates back to 2013, when Godlewski, then age 29, was arrested on charges that, by email and telephone, he solicited a woman (actually an undercover agent) to allow him to engage in sexual relations with her 13-year-old daughter. (R. 20, Plea Agreement, PgID 60–61.) A search of his computer also revealed child pornography. (*Id.* at 61.)

Godlewski pleaded guilty and faced a guidelines range of 121 to 151 months. He had a criminal history score of zero and had never before been to prison. PSR ¶ 48. The PSR documented his diagnosis with BXO, described as "a chronic skin disorder of the male penis characterized by hard white patches and usually a white hardened ring around the tip of the penis." PSR ¶ 59. The PSR explained that BXO "is progressive and often surgery is required if the hardened patches cause excessive constriction of the penis which can impair urination. *Id.* For Godlewski, the condition caused "constriction of his penis and requires that he manually dilate his urethra two to three times per month in order to urinate." *Id.*

This Court imposed a sentence of 121 months in prison and 5 years of supervised release. (R. 37, Amd. Judgment, PgID 205–06.) Godlewski's anticipated release date is July 26, 2022, and he is eligible for home detention on January 26, 2022, approximately a year and a half from now. (Gov. Ex. B at 192.)

2

## II.   <u>Legal Standard for Compassionate Release</u>

Section 3582(c)(1)(A)(i) permits courts to grant a reduction of sentence, after considering the § 3553(a) factors, if "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."

Release in these circumstances is consistent with the Sentencing Commission's policy statements. Specifically, Godlewski suffers "a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A)(ii); *see United States v. Rahim,* No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020). Moreover, there are "Other Reasons" under U.S.S.G. § 1B1.13, cmt. n. 1(D), warranting compassionate release, because of his lack of access to medical care during this pandemic, and the particular vulnerability of inmates to COVID-19. *See Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020); *see also United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241 (S.D. Miss. May 1, 2020) (granting release to a non-elderly inmate with no pre-existing conditions because of BOP's failure to control the outbreak at his facility).

3

### III.   Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)(i) gives this Court authority to grant relief to a person moving for compassionate release after *either* (1) he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."

Godlewski reports that he asked the warden for release on June 23, 2020, and that he received a denial letter on July 16, 2020. Godlewski agreed to mail these records to counsel on July 21, 2020, and postal-service tracking information shows the records are still en route. Counsel notified the government of Godlewski's request on July 21, before the government filed its response. The government last asked for updated records from BOP on July 15, before Godlewski says he received a denial letter. Given the frequency of the BOP's failure to produce administrative request to the prosecutor's office in this district, this Court should credit Godlewski's report of requesting relief and find that the exhaustion requirement is met.

### IV.   Extraordinary and Compelling Reasons for Release

#### A. FCI Petersburg Low

Godlewski's incarcerated status alone puts him at a higher risk of contracting COVID-19. *See United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3

4

(E.D. Mich. June 10, 2020) (citing CDC guidance that detention facilities present particular risks from COVID-19). More than 10,000 inmates in the Bureau of Prisons have contracted COVID-19, and although more than 5,500 have recovered, at least 99 inmates and 1 staff member have died. https://www.bop.gov/coronavirus/. The BOP's website shows that, at Petersburg Low FCI, where Godlewski is incarcerated, only 53 out of 949 prisoners there have been tested—less than 6% of the population. *Id.* One of those prisoners tested positive for the virus. Even "[z]ero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases." *United States v. Amarrah,* No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020). "This disease spreads asymptomatically, which means the Court and the prison system can take no comfort in a lack of confirmed cases, and all parties should be deeply concerned by the lack of universal testing of inmates and staff." *Id.*

### B. Balantis Xerotica Obliterans

"Balanitis Xerotica Obliterans (BXO) is a chronic, often progressive disease, which can lead to phimosis and urethral stenosis, affecting both urinary and sexual function." A. Hartley, et al., *The surgical treatment of Balanitis Xerotica Obliterans*, INDIAN J. PLAST. SURG. (2011), https://perma.cc/P4WX-3UFV. There is no known cure, and the condition is associated with a higher risk of cancer. Wikipedia, *Lichen Sclerosus*, https://en.wikipedia.org/wiki/Lichen_sclerosus (collecting sources).

One main side effect of BXO is "urethral strictures," meaning a narrowing of the urethra because of the build-up of scar tissue or inflammation. The Center for Reconstructive Urology, *Dilation, Urethrotomy, Stent*, https://www.centerforre constructiveurology.org/urethral-stricture/dilation-urethrotomy-stent/. A common treatment for urethral strictures is "dilation," typically meaning "a urologist progressively stretching the stricture using a series of dilators that gradually increase in size." *Id.* This is what a "dilator" looks like:



*Id.*

Godlewski's medical records confirm he continues to suffer serious problems from BXO. He has seen a urologist, who recommended reconstructive surgery, but the "surgical procedure to correct this issue is not available in this area." (Gov. Ex. B at 129.)

Without the surgery, Godlewski "has to continue to self dilate once to twice a week." (Gov. Ex. B at 129.) He cannot do these dilations in his cell because the

6

dilators are considered dangerous if kept in a prisoner's living area. Thus, he reports that he must go to medical services to perform them on himself. He has missed appointments because of the COVID-19 lockdown.

Godlewski also had an ultrasound in 2020 that revealed growths in his testicular area "consistent with cysts as well as hydroceles." (Gov. Ex. B at 129.) "Hydroceles" is a swelling of the scrotum that occurred when fluid collects in the thin sheath around the testicle. https://www.mayoclinic.org/diseases-conditions/hydrocele/symptoms-causes/syc-20363969#:~:text=A%20hydrocele%20(HI%2Ddroe%2D,or%20injury%20within%20the%20scrotum. His condition has led to urinary tract infections, pain, and sacs in his genitals called "spermatocele of the epididymis." (Gov. Ex. B at 131, 136, 159.) His condition also has led to burning with urination and blood in his urine on multiple occasions. (*Id.* at 11, 48.) On one occasion, he rated his pain urinating as 9 out of 10, and was provided Tylenol. (*Id.* at 48.) His most recent urinary tract infection was resolved with the powerful antibiotic Cipro on June 23, 2020, just a month ago. (*Id.* at 87.)

This Court addressed another case where a person with chronic conditions faced a lack of medical care in *Snell v. United States*, No. CR 16-20222-6, 2020 WL 2850038, at *2 (E.D. Mich. June 2, 2020). There, the defendant suffered congenital spina bifida, and, similar to Godlewski, was suffering urinary tract infections,

allegedly because of the prison's failure to provide proper care. *Id.* at *1. This Court explained: "Robust health systems outside of prison have been overwhelmed by the current pandemic, so much more so is the strain on an already under resourced BOP facility that is not designed to provide acute medical care en masse." *Id.* at *2. As a result, the "little medical resources" available at the prison "are now being funneled to COVID-19 patients, leaving inmates with chronic conditions, like Snell, more vulnerable to deterioration or infection." *Id.* The Court thus determined that, because the prison was "not a conducive facility for Snell's health, both in regards to the virus and his underlying condition, extraordinary and compelling reasons exist for his release." *Id.* at *3.

This Court should likewise find that Godlewski's lack of access to care during this pandemic, creating serious problems with his urinary tract, is an extraordinary and compelling reason for release.

## V.     Release is Consistent with the § 3555(a) Factors

There is no dispute that this was an extremely serious crime, as reflected in this Court's sentence. But at least one offender charged with the same crime has been granted release. *United States v. Sholler*, No. 17-CR-00181-SI-1, 2020 WL 2512416, at *1 (N.D. Cal. May 15, 2020) (granting reduction from 90 months to 38 months for defendant charged with online enticement, who pled guilty to attempted

transfer of obscene material to a minor). And more importantly, at this stage, especially in light of the global pandemic, the § 3553(a) factors favor release.

Godlewski has been in custody for more than six and a half years, over 76% of his imposed term of imprisonment. (Gov. Ex. B at 193.) He is eligible for release on home detention in January 2022, a year and a half from now. Releasing Godlewski now to home confinement, rather than forcing him to remain in custody for another year and half during this pandemic, will not increase danger to the public.

This is supported by Godlewski's prison record. He has incurred zero disciplinary infractions. (*Id.* at 186.) He has a PATTERN score of low. (*Id.* at 187.) And he has completed several educational programs. (*Id.* at 4.) His programming includes job skills—such as money management and mock job fairs—along with art classes, health classes, and courses on avoiding criminal thinking. (*Id.*) The government emphasizes an incident where he is alleged to have been in possession of improper materials, but tellingly, he did not receive any discipline for that incident, undermining its severity.

Godlewski works in the UNICOR print shop. (Gov. Ex. B at 188.) He also completed the 30-hour nonresidential drug program, and the 12-hour drug program. (*Id.* at 189.) In addition, he received 4,000 hours of training certified by the U.S. Department of Labor for dog-training services. (*Id.* at 4.) This was not mere dog-

walking. Rather, he learned to train service dogs for diabetic alerts and seizure alerts, and as licensed therapy companions.

The government notes that Godlewski declined sex-offender treatment. First, a clarification: The government notes that there is both residential and nonresidential sex offender treatment in BOP. That's true, but there is no indication Godlewski was ever offered the residential treatment program. As to the nonresidential program, Godlewski initially agreed to participate in February 2015 and was placed on a wait list. (Gov. Ex. B at 195.) He asked to be removed from the wait list on October 2017, more than two years later. (*Id.* at 1.)

Godlewski explained to counsel that he removed himself from the waitlist after receiving warnings—from other inmates and a prison guidebook—that program participation could be used against him. Indeed, there are reports that federal prisoners have "discovered that statements they made to gain admittance to a sex offender treatment program (SOTP), and issues they discuss in treatment, are not treated as confidential and can be used against them in civil commitment hearings." Derek Gilna, *Federal Sex Offender Civil Commitment Process Under Fire*, Prison Legal News (Aug. 2012), https://www.prisonlegalnews.org/news/2012/aug/15/federal-sex-offender-civil-commitment-process-under-fire/.

Counsel knows from experience that longtime defenders often warn clients about the serious risks of participating and sharing information in these programs, out of fear the information can be used against a person. In fact, in *Defending a Federal Criminal Case*, a leading text for federal defenders, the head defender for the Middle District of Tennessee, Henry Martin, advises: "counsel should remind clients that participation in a SOMP or a SOTP could affect them negatively at any future civil commitment proceeding, that they have a Fifth Amendment right to refuse to discuss their sexual histories, and that any institutional penalty (e.g., loss of privileges) for failure to participate may well be minor compared to the risk of lifetime civil commitment." Todd Bussert & Henry Martin, *The Federal Bureau of Prisons*, at 19-1057, Chapter 19 in DEFENDING A FEDERAL CRIMINAL CASE (2010), https://www.prisonlegalnews.org/media/publications/federal_defenders_of_san_diego_fbop.pdf. Given this advice, Godlewski's decision to decline the program should not be viewed as any lack of desire on his part for treatment.

On the contrary, Godlewski remains committed to treatment. He expressed to counsel that he is "definitely not in denial" that he has a problem. He has sought assistance from the prison psychology department, and more recently, he began participating in the "Life Connections Program," an 18-month program meant "to foster personal growth and responsibility, and to right the relationships among [a

11

person's] victim(s), community, and inmate, using secular outcome-based objectives." (Ex. 1, LCP Description.) To be admitted, a prisoner must receive a recommendation from staff and approval from the warden. (*Id.*) Godlewski's participation in this intensive program shows his commitment to change.

If released, Godlewski intends to live in a home owned by his mother, Marlene Klumpp. Counsel also spoke to Rodney Rosselle, who employed Godlewski before this offense at his towing company in Northville, Michigan. PSR ¶ 27. Mr. Rosselle reported that Godlewski was a good employee, and that if Godlewski obtained the proper certificates, he would be willing to hire him again.

## Conclusion

In light of Godlewski's medical condition, evidence of rehabilitation, and the COVID-19 pandemic, he respectfully requests compassionate release.

Respectfully submitted,

s/Benton C. Martin
FEDERAL COMMUNITY DEFENDER
613 Abbott St., Suite 500
Detroit, MI 48226
PHONE: 313-967-5832
EMAIL: Benton_Martin@fd.org

Dated: July 23, 2020

12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 14-20153

        v.        District Judge Arthur J. Tarnow

MICHAEL RICHARD GODLEWSKI,

        Defendant.

_____/

## **CERTIFICATE OF SERVICE**

    I certify that on July 23, 2020, I filed the foregoing paper with the through the court's electronic docketing system, which will send notification to opposing counsel of record.

                  */s/Benton C. Martin*

13