UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.

MICHAEL RICHARD GODLEWSKI,

  Defendant.

Criminal Case No. 14-20153

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

_____/

**OPINION AND ORDER GRANTING MICHAEL RICHARD GODLEWSKI'S MOTION TO REDUCE SENTENCE [38]**

Defendant-petitioner, Michael Richard Godlewski, is serving 121 months (ten years and one month) in prison for online enticement and coercion of a minor, in violation of 18 U.S.C. § 2422(b), and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). (ECF No. 36). On July 10, 2020, Godlewski filed a Motion to Reduce Sentence [38] pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 38, PageID.211). The Court appointed the Federal Community Defender to represent Godlewski and ordered the United States to respond to Godlewski's request for release. (ECF No. 39). The Court held a hearing on Godlewski's Motion [38] on July 28, 2020. For the reasons stated on the record and in the opinion below, Godlewski's Motion [39] is **GRANTED**, and his sentence is reduced to time served.

## BACKGROUND

Godlewski was born in Grand Rapids, Michigan in 1984. (PSR ¶ 52). His parents divorced when he was four and his mother remarried shortly thereafter. (*Id.*) Unfortunately, Godlewski's new stepfather was an alcoholic who verbally and physically abusing everyone in the family. (*Id.*) This carried on until Godlewski was eighteen, at which time his stepfather died. (*Id.*) In addition, one of Godlewski's two stepbrothers, who was older than Godlewski, sexually abused Godlewski for multiple years, including forcing him to engage in sexual intercourse with his sister. (PSR ¶ 53).

Godlewski graduated from high school in 2003 and was enrolled in Oakland Community College at the time of his arrest. (PSR ¶¶ 68, 70). At the time of his arrest he was aiming to earn his license as an electrician. (PSR ¶ 71). Prior to his arrest, Godlewski had a thorough employment history in the towing and repossessing field. (PSR ¶¶ 72-78).

In December 2013, Godlewski posted a Craigslist "casual encounters" ad asking for "Moms with daughter-m4w (around the d)." (PSR ¶ 11). An undercover officer responded to the ad, posing as a mother of a thirteen-year-old girl. (PSR ¶¶ 12-13). Over the course of several emails and a phone call, Godlewski described the sexual activity he would pursue with the pair, including dressing in diapers and oral sex, and, on the appointed day, arrived with condoms, marijuana, and diapers. (PSR

¶¶ 13-15). Upon being arrested, he quickly confessed to his actions, and a subsequent investigation of his personal computers revealed a collection of child pornography. (PSR ¶¶ 15-17).

Godlewski was charged in a criminal complaint with using interstate commerce to knowingly entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (ECF No. 1). Magistrate Judge Grand ordered Godlewski detained that same day. (ECF No. 2). Godlewski eventually pled guilty to that crime, which carried a ten-year mandatory minimum, as well as to receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), which carried a five-year mandatory minimum. (ECF No. 20). On October 22, 2014, the Court sentenced Godlewski 121 months in prison, the low end of his guideline range and one month over the ten-year mandatory minimum. (ECF No. 27).

Godlewski is currently thirty-five years-old, incarcerated at FCI Petersburg Low, and scheduled for release on July 26, 2022. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register Number 49580-039) (last visited Sept. 11, 2020).

## ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the compassionate release statue, provides, in relevant part:

> **(A)**  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully

>exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>>**(i)**  extraordinary and compelling reasons warrant such a reduction.

18 U.S.C.A. § 3582(c)(1).

Although the Government initially argued that Godlewski had not exhausted his administrative remedies, it chose to waive that argument at the hearing. (ECF No. 48, PageID.527; Tr. 2). Consequently, "[t]he Court now has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether [Godlewski] poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors." *Crider v. United States*, No. 01-81028-1, 2020 U.S. Dist. LEXIS 133233, at *4 (E.D. Mich. July 28, 2020).

    A. <u>Extraordinary and Compelling Reasons for Release</u>

In order to ascertain whether there are extraordinary and compelling reasons to release Godlewski, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing

Commission." 18 U.S.C. § 3582(c)(1)(A). The Application Notes to the relevant policy statement provide the following:

> **1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>> **(A) Medical Condition of the Defendant.**—
>>> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>> **(ii)** The defendant is—
>>>> **(I)** suffering from a serious physical or medical condition,
>>>> **(II)** suffering from a serious functional or cognitive impairment, or
>>>> **(III)** experiencing deteriorating physical or mental health because of the aging process,
>>>
>>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> [. . .]
>
>> **(D) Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13

Here, Godlewski has presented "Other Reasons" in combination with a "Medical Condition," to warrant compassionate release. Although only thirty-five, Godlewski suffers from a rare medical condition called Balanitis Xerotica Obliterans

("BXO"), "a chronic skin disorder of the male penis characterized by hard white patches and usually a white hardened ring around the tip of the penis." (PSR ¶ 59). BXO is an "often progressive disease, which can lead to phimosis and urethral stenosis, affecting both urinary and sexual functions." A. Hartley et al., *The Surgical Treatment of Balanitis Xerotica Obliterans*, 44 IND. J. PLASTIC SURGERY 91, 91 (2011). People who suffer from BXO often develop urethral stricture disease, the abnormal narrowing of the urethra, which "can lead to urine infections, prostatitis, bladder damage, and even kidney failure [if surgery is not performed]." *Urethral Stricture*, CTR. FOR RECONSTRUCTIVE UROLOGY, https://www.centerforreconstructiveurology.org/urethral-stricture/ (last visited Sept. 11, 2020).

In June 2020, the Bureau of Prisons ("BOP") informed Godlewski that "the surgical procedure needed to correct [his condition was] not available in [his] area." (ECF No. 43-1, PageID.428). Consequently, Godlewski placed a request for transfer to another facility in an area where the procedure would be available. (ECF No. 43-1, PageID.450). As explained by the Clinical Director at FCI Petersburg Low, his request was denied by the BOP's Regional Medical Director, seemingly due to the rarity of his condition:

> Inmate Godlewski has a very unusual case. Prior to entering BOP, he had a urethral surgery, which has resulted in the continuous formation of urethral strictures. As a result, the inmate must self-dilate weekly to prevent obstruction of the area. The inmate has seen Urology here,

> however [Urology at Petersburg FCC] does not perform this surgery. As VCU [Virginia Commonwealth University] is not an option to Federal Inmates, we could not pursue this option. At this point, we have not identified a local Urologist who can perform this very extensive reconstruction procedure. This was the reason for [Godlewski's] re-designation request, however [the request] was denied by the Regional Medical Director. As far as a set of criteria used to determine the appropriateness of the transfer request, the Care Level Classification guideline for the Federal Bureau of Prisons was used, however as his condition is rare, it is not covered in this document.

(ECF No. 50, PageID.554). Thus, Godlewski has been left with no choice but to continue performing urethral dilations twice a week while suffering from hydroceles on his testicles,[1] spermatocele of the epididymis,[2] and Urinary Tract Infections ("UTIs"). (ECF No. 52, PageID.586; ECF No. 43-1, PageID.428, 430).

The necessity of performing these dilations has long been a nuisance for Godlewski, but with COVID-19, what was once merely uncomfortable has become a serious health risk. As of September 7, 2020, Godlewski has not been able to go to medical services to perform his dilations given the outbreak at FCI Petersburg Low. (ECF No. 52, PageID.586); *see COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ (last updated Sept. 11, 2020) (listing sixty-one active cases and seventy recovered at FCI Petersburg Low). Instead, BOP staff have

---

[1] "A hydrocele . . . is a type of swelling in the scrotum that occurs when fluid collects in the thin sheath surrounding the testicle." *Hydrocele*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/hydrocele/symptoms-causes/syc-20363969 (last visited Sept. 11, 2020).

[2] "A spermatocele . . . is an abnormal sac (cyst) that develops in the epididymis — the small coiled tube located on the upper testicle that collects and transports sperm." *Spermatocele*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/spermatocele/symptoms-causes/syc-20377829 (last visited Sept. 11, 2020).

instructed Godlewski to perform the dilations in his cell. (ECF No. 52, PageID.586). These dilations involve Godlewski "injecting topical painkiller directly into his urethra" and then using "two metal rods . . . to gradually expand his urethra." (ECF No. 52, PageID.578). This requires Godlewski to "break through the solidified patches of scar tissue that build up," which regularly causes bleeding. (*Id.*). A procedure of such a sensitive nature is appropriate for a medical environment with sterile tools,[3] not an unsanitary cell with little privacy.

Consequently, "[t]he Court finds that because [FCI Petersburg Low] is not a conducive facility for [Godlewski's] health, both in regard[] to the virus and his underlying condition, extraordinary and compelling reasons exist for his release." *Snell v. United States*, No. 16-20222-6, 2020 U.S. Dist. LEXIS 96279, at *7 (E.D. Mich. June 2, 2020) (granting release to an individual whose underlying condition required him to self-catheter without proper resources, leading to UTIs).

B. Dangerousness

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the

---

[3] The Court notes, with concern, Godlewski's allegation that the medical staff at FCI Petersburg Low have repeatedly neglected his dilation tools, allowing them to become rusty, and administering him a tetanus shot rather than replacing them. (ECF No. 38, PageID.211). The Court declines to rest its decision on these allegations, however, because of the difficulty in verifying their truth. Nevertheless, if true, these failures represent a level of indifference by the BOP that shocks the conscience. Such an abdication of responsibility by an institution charged with the safety of thousands of vulnerable individuals across the country cannot be tolerated.

community, as provided in 18 U.S.C. § 3142(g)." In his six-and-a-half years of incarceration, Godlewski has received zero disciplinary infractions. (ECF No. 43-1, PageID.485). Moreover, Godlewski has completed several thousand hours of educational courses and programming, including the Non-Residential Drug Treatment Program, and has received positive feedback for his work in the Print Factory. (ECF No. 43-1, PageID.303, 488). And despite the seriousness of his crimes, the BOP has designated Godlewski a low risk for recidivism. (ECF No. 43-1, PageID.486). Upon release, Godlewski would be able to live in a home owned by his mother and resume working for his previous employer, who reported that Godlewski was a good employee. (ECF No. 45, PageID.512).

The Government argues that Godlewski remains dangerous because he did not complete a sex offender treatment program while in prison. Given this Court's prior recommendation that Godlewski complete such a program, Godlewski's decision not to participate merits discussion. On February 2, 2015, Godlewski agreed to participate in the Non-Residential Sex Offender Program. (ECF No. 43-1, PageID.494). He was placed on a wait list. (ECF No. 43-1, PageID.300). After more than two years, on October 3, 2017, Godlewski removed his name from the wait list. (*Id.*). According to Godlewski, he chose to remove himself from the wait list after he learned that any statements made in the course of treatment could be used against him in future proceedings. (Tr. 9). This is consistent with advice routinely given by

Federal Defenders. *See, e.g.*, Todd Bussert & Henry Martin, *The Federal Bureau of Prisons*, *in* 2 DEFENDING A FEDERAL CRIMINAL CASE 19-1035 (Fed. Defs. of San Diego, Inc. ed. 2010). Moreover, the Government confirmed that this was possible, albeit unlikely, particularly "if Godlewski confessed to additional uncharged conduct." (ECF No. 50, PageID.554, 558). Instead, Godlewski opted to participate Life Connections Program, which aims "to foster personal growth and responsibility, and to right the relationships among . . . victim(s), community, and inmate, using secular outcome-based objectives." (ECF No. 45-1, PageID.514; ECF No. 43-1; PageID.303). The Court finds that Godlewski's choice to initially sign up for the Non-Residential Sex Offender Program, as well as his participation in the Life Connections Program, demonstrates that he recognizes his problem and wants to seek help. The Court will not penalize Godlewski for heeding the advice of seasoned defense attorneys.

In light of Godlewski's clean disciplinary record, his extensive program participation history, the BOP's assessment that he presents a low risk of recidivism, and the support he has from his family and former employer, the Court finds that Godlewski will not present a danger upon release.

Section 3553(a) Factors

The last step a district court contemplating a motion for compassionate release must take is to consider the sentencing factors provided by 18 U.S.C. § 3553(a). Those are as follows:

> **(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for—
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> [. . .]
> **(5)** any pertinent policy statement—
> [. . .]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)

The Court's consideration of these factors is demonstrated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the July 28, 2020 hearing. Given that this was Godlewski's first time in prison, the Court finds that the six-and-a-half years he has served thus far will sufficiently deter any future criminal conduct. The Court also finds that the BOP is incapable of providing treatment for, or even proper management of, Godlewski's medical condition.

Godlewski's crimes were serious and merited the 121-month sentence originally given by the Court. Nevertheless, Godlewski has presented a credible release plan, and the quality of his time in prison demonstrates that he is committed to improving himself and seeking help. Moreover, it is clear to the Court that Godlewski's urgent medical and psychological needs will not be addressed as long as he is incarcerated. Consequently, the Court finds that a sentence reduction to time served is consistent with the § 3553(a) factors.

## Conclusion

**IT IS ORDERED** that Godlewski's Motion to Reduce Sentence [38] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Godlewski be **IMMEDIATELY RELEASED** to begin his five-year term of **SUPERVISED RELEASE** in the Western District of Michigan, as outlined by the May 12, 2015 Judgment (ECF No. 36, PageID.197), including the following Special Conditions:

1. **The defendant shall undergo a strict fourteen-day quarantine upon release and shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.**
2. **The defendant shall successfully complete any sex offender diagnostic evaluations, treatment, or counseling programs, as directed by the probation officer. The defendant shall be required to submit to periodic polygraph testing at the discretion of the probation officer as a means of ensuring compliance with the requirements of supervision or treatment. No violation proceedings will arise solely on the results of a polygraph examination. Based on the defendant's ability to pay, the defendant shall pay the cost of the polygraph examination in an amount determined by the probation officer. Reports pertaining to sex offender assessments, treatment, and polygraph examinations shall be provided to the probation officer.**
3. **The defendant shall not have contact of any kind with children under the age of 18, without prior approval of the probation officer. The defendant shall not frequent places where children congregate on a regular basis (such as, but not limited to, school grounds, playgrounds, child toy stores, video arcades, etc.).**
4. **The defendant shall not purchase, sell, view, or possess images, in any form of media or live venue, that depict pornography, sexually explicit conduct, child erotica, or child nudity. He shall not patronize any place where such material or entertainment is available.**
5. **The defendant shall have employment pre-approved by the Probation Department. He shall not be employed at or participate in any volunteer activities that involve contact with children under the age of 18 without prior approval from the probation officer.**
6. **The defendant shall have all residences pre-approved by the Probation Department. He shall not live in a residence where children under the age of 18 reside without prior approval of the probation officer.**
7. **The defendant shall provide the probation officer with accurate information about all computer systems (hardware/software), all passwords, and Internet Service Provider(s), that he has potential and/or reasonable access to, and shall abide by all rules of the U.S. Probation Department Computer Monitoring Program. The defendant shall only access a computer approved by the U.S. Probation Department. He shall consent to the probation officer conducting periodic unannounced examinations of all computer systems, which may include computer monitoring software at his expense. For the purpose of accounting for all**

    **computers, hardware, software and accessories; the defendant shall submit his person, residence, computer and/or vehicle to a search conducted by the U.S. Probation Department at a reasonable time and manner. The defendant shall inform any other residents that the premises and his computer may be subject to a search pursuant to this condition. He shall provide the probation officer with access to any requested financial information including billing records (telephone, cable, internet, satellite, etc.).**

8. **The defendant shall make monthly payments on any remaining balance of the restitution at a rate and schedule recommended by the Probation Department and approved by the Court.**
9. **The defendant shall not incur any new credit charges or open additional lines of credit without the approval of the probation officer.**
10. **The defendant shall provide the probation officer access to any requested financial information.**
11. **The defendant shall participate in a program approved by the Probation Department for mental health counseling, if necessary.**
12. **The defendant shall participate in a program approved by the Probation Department for substance abuse, which may include testing to determine if the defendant has reverted to the use of drugs or alcohol, if necessary.**

    **SO ORDERED**.

                                          <u>s/Arthur J. Tarnow</u>
                                          Arthur J. Tarnow
Dated: September 11, 2020         Senior United States District Judge